ORAL ARGUMENT SCHEDULED JANUARY 13, 2017
No. 16-1202

UNITED STATE COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

AVIATION SUPPLIERS ASS'N, INC.
Petitioner,
v.
MICHAEL P. HUERTA, Administrator, FEDERAL AVIATION
ADMINISTRATION, and the UNITED STATES OF AMERICA,
Respondents

---

Petition for Review of Federal Aviation Administration (FAA) Orders:
Maintenance Annex Guidance (revision 6)
and
FAA Notice 8900.360

---

**Brief**
of Appellant Aviation Suppliers Association, Inc.

---

Counsel for Appellant Aviation Suppliers Association, Inc.:

Jason Dickstein
Washington Aviation Group, PC and the
Law Offices of Jason A. Dickstein
2233 Wisconsin Avenue NW
Suite 503
Washington, DC 20007
jason@washingtonaviation.com
Tel: (202) 628-6777
Fax: (202) 628-8948

---

## Certificate as to Parties, Rulings, and Related Cases

### A) Parties

<u>Petitioner</u>

The Petitioner in this matter is the Aviation Suppliers Association, Inc.

<u>Respondents</u>

The Respondents in this matter are Michael Huerta, Acting Administrator, Federal Aviation Administration, and the United States of America.

### B) Rulings Under Review

The rulings under review in this proceeding are the following rulings of the Federal Aviation Administration (FAA) (copies of the rulings are found in the Appendix):

- Maintenance Annex Guidance Between the Federal Aviation Administration for the United States of America and the European Aviation Safety Agency for the European Union *(*revision six) issued by the Respondents and effective on the 1st day of June, 2016.

- FAA Notice 8900.360 issued by the Respondents on the 2nd day of May, 2016, which sets implementation standards for the Maintenance Annex Guidance.

### C) Related Cases

The rulings on review have not previously been before this Court or any other court.

### D) Corporate Disclosure Statement

- The Aviation Suppliers Association, Inc. does not have any parent corporation and no publicly held corporation owns 10% or more of its stock.
- The Aviation Suppliers Association, Inc. is a non-profit trade association that represents the interest of the aircraft parts distribution community.

## Table of Contents

## Contents

Certificate as to Parties, Rulings, and Related Cases .....................................2

Table of Contents...........................................................................................3

Table of Authorities.......................................................................................6

Glossary .......................................................................................................11

Jurisdictional Statement...............................................................................12

Statement of Issues Presented......................................................................12

Reference to Appendix and Addendum ........................................................ 14

Statement of the Case .............................................................................. 14

    1.    Summary .................................................................................... 14

    2.    The Agreement .......................................................................... 15

    3.    Administrative Process ............................................................... 18

    4.    The Documentation Requirement ............................................... 19

    5.    The MAG Documentation Requirement Adversely Affects the Industry Because it Follows Neither US nor EU standards ................................ 20

    6.    Aircraft Parts Transactions ........................................................ 22

Summary of the Argument .......................................................................... 24

Standing ................................................................................................... 26

Argument .................................................................................................. 28

    1.    The Court is Authorized to Review the MAG and to Grant a Remedy 28

    2.    The MAG Documentation Provisions Violate the Constitution ........ 30

    a.    The Functions Being Regulated Are Commerce ............................. 31

    b.    There is No Statutory Authority for the Documentation Elements of the MAG 31

    c.    The Executive Branch Does Not Have Constitutional Authority for the Documentation Elements of the MAG ......................................... 36

    3.    The MAG is a Sole Executive Agreement that Violates the Will of Congress (thereby offending Due Process) as and as Such it Cannot Be Sustained 37

    a.    When the Executive Acts in Contravention to Congress, it's Power is at its Lowest Ebb ................................................................... 37

    b.    The MAG is a Sole Executive Agreement ..................................... 37

    c.    The MAG Documentation Requirements Violate the Spirit of the Paperwork Reduction Act ............................................................. 38

    d.    The MAG Documentation Requirements Cannot Survive a Chevron Analysis 40

    e.    The Court of Appeals Cannot Sustain the FAA's Actions by Disabling Congress from Acting ....................................................... 42

4.    The MAG Documentation Requirements Violates the Requirements of the Paperwork Reduction Act ........................................................43

5.    The MAG Documentation Requirements Violated the Administrative Procedures Act ...................................................................................47

a.    The MAG Documentation Requirements Violated the Administrative Procedures Act Notice-and-Comment Requirements..........................................47

b.    The MAG Documentation Requirements Violated the 'Arbitrary and Capricious' Standard of the Administrative Procedures Act.............................50

6.    The MAG Documentation Requirements Violated the FAA's Own Notice-and-Comment Requirements ..................................................52

7.    The MAG is an FAA Document that is Enforced by the FAA .........55

a.    FAA is a MAG Party .......................................................................55

b.    FAA Interprets the MAG ................................................................55

c.    FAA is Responsible for Ensuring Compliance with the MAG .........56

d.    FAA Has the Power to Withhold Privileges for Non-Compliance with the MAG ..........................................................................................56

e.    Actual Implementation Has Enacted a Penalty Against Distributors57

f.    The MAG Documentation Requirement Does Not Reflect European Regulations....................................................................................................58

8.    The MAG's Documentation Standard has a Prejudicial Effect on U.S. Commerce That Has Been Documented in the Federal Register .......................58

9.    The FAA Has Attempted (Ineffectively) to "Undo" the MAG Documentation Standard – this Effort was Ineffective, but it Demonstrates an FAA Admission that the MAG Imposes a Substantive Effect ............................59

CONCLUSION...........................................................................60

## Table of Authorities

**Cases**

Acadian Gas Pipeline Sys. v. Fed. Energy Regulatory Com., 878 F.2d 865 (5th Cir. 1989) ........................................................................................51

** Aid Ass'n for Lutherans v. United States Postal Serv., 321 F.3d 1166 (D.C. Cir. 2003) ......................................................... 35, 50, 61

Alinsky v. United States, 415 F.3d 639 (7th Cir. 2005) ...........................................33

Am. Library Ass'n v. FCC, 401 F.3d 489 (D.C. Cir. 2005) ....................................26

** Am. Library Ass'n v. FCC, 406 F.3d 689 (D.C. Cir. 2005) ..............................32

** American School of Magnetic Healing v. McAnnulty, 187 U.S. 94 (1902)......29

** Armstrong v. Exceptional Child Ctr., 575 U.S. _____, 2015 U.S. LEXIS 2329 (2015) ........................................................ 27, 29, 30, 46

Barnhart v. Walton, 535 U.S. 212 (2002). ...........................................................41

Briehl v. Dulles, 248 F.2d 561 (D.C. Cir. 1957) ....................................................36

Chamber of Commerce of the United States v. Reich, 74 F.3d 1322 (D.C. Cir. 1996) ........................................................................................31

Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837 (1984) ...................... 35, 40, 41

Dames & Moore v. Regan, 453 U.S. 654 (1981); ........................................... 37, 43

Envtl. Def. Fund, Inc. v. Envtl. Prot. Agency, 716 F.2d 915 (D.C. Cir. 1983).......54

> ** - Authorities on which we chiefly rely are marked with asterisks

6

Envtl. Defense Fund v. Gorsuch, 713 F.2d 802 (D.C. Cir. 1983) ...........................49

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167

(2000) ...........................................................................................................26

Guerra v. Meese, 614 F. Supp. 1430 (D.D.C. 1985) ................................................61

Humane Soc'y of the United States v. Glickman, 217 F.3d 882 (D.C. Cir. 2000)..30

Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333 (1977) ........................26

Int'l Ladies' Garment Workers' Union v. Donovan, 722 F.2d 795 (D.C. Cir. 1983)

..............................................................................................................................50

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ..............................................26

Mast Indus. v. Regan, 596 F. Supp. 1567 (Ct. Int'l Trade 1984) ...........................49

** MCI Telecomms. Corp. v. Am.Tel. & Tel. Co., 512 U.S. 218 (1994)........ 35, 60

Mendoza v. Perez, 754 F.3d 1002 (D.C. Cir. 2014) ................................................29

** Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29

(1983) ....................................................................... 28, 32, 36, 50, 52

Nat'l Wildlife Fed'n v. Clark, 577 F. Supp. 825 (D.D.C. 1984)...........................61

Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan, 979 F.2d 227 (D.C. Cir.

1992) ...........................................................................................................49

Perez v. Mortg. Bankers Ass'n, 575 U.S. _____, 2015 U.S. LEXIS 1740 (2015).

.......................................................................................................... 49, 53

Pickus v. United States Bd. of Parole, 507 F.2d 1107 (D.C. Cir. 1974) ................48

Saco River Cellular v. FCC, 133 F.3d 25 (D.C. Cir. 1998)....................................47

** Service v. Dulles, 354 U.S. 363 (1957) ............................................................53

Shell Offshore Inc. v. Babbitt, 238 F.3d 622 (5th Cir. 2001)..................................48

Transohio Sav. Bank v. Dir., Office of Thrift Supervision, 967 F.2d 598 (D.C. Cir. 1992) ..........................................................................................................32

Union of Concerned Scientists v. Atomic Energy Comm'n, 499 F.2d 1069 (D.C. Cir. 1974) ........................................................................................................53

United States Steel Corp. v. EPA, 595 F.2d 207 *modified on rehearing*, 598 F.2d 915 (5th Cir. 1979).....................................................................................49

United States v. Bishop, 66 F.3d 569 (3d Cir. 1995)...............................................31

** United States v. Guy W. Capps, Inc., 204 F.2d 655 (4th Cir. 1953)................37

United States v. Lopez, 514 U.S. 549 (1995) ..........................................................31

** United States v. Yoshida Int'l, 526 F.2d 560 (C.C.P.A. 1975) ........................36

Va. Uranium, Inc. v. McAuliffe, 147 F. Supp. 3d 462 (W.D. Va. 2015)...............30

Vitarelli v. Seaton, 359 U.S. 535 (1959) ................................................................53

Way of Life Television Network, Inc. v. FCC, 593 F.2d 1356 (D.C. Cir. 1979) ...53

Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952) ................... 37, 43

**Statutes**

5 U.S.C. § 551....................................................................................................29

** 5 U.S.C. § 553 ................................................................................ 47, 48, 52

\*\* 5 U.S.C. § 706 ........................................................................ 50, 52

\*\* 44 U.S.C. § 3501 .........................................................................38

44 U.S.C. § 3502 .............................................................................44

44 U.S.C. § 3506 ....................................................................... 38, 39

44 U.S.C. § 3507 ....................................................................... 38, 44

44 U.S.C. § 3512 ....................................................................... 38, 45

49 U.S.C. § 106 ...................................................................... 32, 33, 42

49 U.S.C. § 40104 ........................................................... 32, 33, 34, 42

49 U.S.C. § 40105 ...........................................................................34

49 U.S.C. § 44725 ...........................................................................31

\*\* 49 U.S.C. § 46110 ........................................................ 12, 29, 46, 53

### Other Authorities

\*\* FAA Chief Counsel's Opinion Letter from Rebecca Macpherson to Jason
   Dickstein (August 6, 2009), App'x at 139 ............................. 20, 39, 51

FAA Notice 8900.380 ................................................................. 55, 59

FAA Order 8130.21H, CHG 1 (January 11, 2016), App'x at 132 .........................21

H. Rep't 104-99 (Conference Report) .................................................46

ICR-OIRA Conclusion 201010-2120-001 (August 8, 2011) .................................39

**Rules**

Production and Airworthiness Approvals, Part Marking, and Miscellaneous

   Amendments, 71 Fed. Reg. 58,914 (Oct. 5, 2006) ....................................... 19, 39

Production and Airworthiness Approvals, Part Marking, and Miscellaneous

   Amendments, 74 Fed. Reg. 53,368 (Oct. 16, 2009) ................... 19, 39, 48, 54, 59

**Regulations**

5 C.F.R. § 1320.3 ...................................................................................... 44, 45

** 14 C.F.R. § 11.23. ...................................................................................54

** 14 C.F.R. § 11.29. ...................................................................................54

14 C.F.R. § 21.146 ......................................................................................23

14 C.F.R. § 21.316 ......................................................................................23

14 C.F.R. § 21.616 ......................................................................................23

14 C.F.R. § 21.8 ..........................................................................................22

14 C.F.R. § 43.13. .......................................................................................20

**Executive Agreements**

FAA-EASA Maintenance Annex Guidance, App'x at 3 ................................. 14, 15

Technical Implementation Procedures for Airworthiness and Environmental

   Certification Between the FAA of the USA and EASA of the EU (Rev. 5 Sept.

   15, 2015) ..............................................................................................21

**Foreign Regulations**

EASA 145.A.42, App'x at 131 ........................................................................ 20, 21

EASA_M.A.504, App'x at 130................................................................................21

**Foreign Guidance**

EASA AMC M.A.501(a) (*Installation*)............................................................ 20, 22

EASA AMC M.A.613(a) (*Component certificate of release to service*) ................22

## Glossary

| | |
|---|---|
| APA | Administrative Procedures Act (5 U.S.C. 551 et seq.) |
| BASA | Bilateral Aviation Safety Agreement – in the context of this brief, this means the Agreement between the United States and the European Community on Cooperation in the Regulation of Civil Aviation Safety |
| EASA | European Aviation Safety Agency |
| FAA | Federal Aviation Administration |
| MAG | Maintenance Annex Guidance - in the context of this brief, this means the Maintenance Annex Guidance Between the Federal Aviation Administration for the United States of America and the European Aviation Safety Agency for the European Union (revision six) |
| PRA | Paperwork Reduction Act (44 U.S.C. 3501 et seq.) |

## Jurisdictional Statement

This matter involves the appeal of two related documents:

- FAA Notice 8900.360 was issued by the Respondents on the 2nd day of May, 2016.
- The <u>Maintenance Annex Guidance Between the Federal Aviation Administration for the United States of America and the European Aviation Safety Agency for the European Union</u> (revision six) was issued by the Respondents and was effective on the 1st day of June, 2016.  The documentation provisions of this document went into effect on October 1, 2016

The FAA did not have subject-matter jurisdiction that permitted it to issue the documentation requirements in question, and thus there was no jurisdictional basis for the FAA's actions (as further discussed in the Argument).

The Court of Appeals for the DC Circuit has jurisdiction to hear this matter because the orders in question are each final orders signed by the FAA.  The Court of Appeals may review an order of the FAA Administrator, when the petition is brought by a person with a substantial interest in the order.  49 U.S.C. § 46110(a).  For the reasons described under the 'Standing' heading, ASA is a party that has a substantial interest in these orders.

ASA timely filed its notice of appeal on June 22, 2016.

## Statement of Issues Presented

1) Is a US federal agency precluded from imposing requirements that violate statutory authority?

12

2) Did the documentation standards imposed by the MAG and enforced by the Federal Aviation Administration (FAA) exceed the FAA's legal authority (were they ultra vires to FAA's statutory authority)?

3) Is a federal agency prohibited from entering into an international agreement that affects Commerce, but that is not authorized by Congress under any statute?

4) Can the Court of Appeals enjoin a federal agency from enforcing an executive agreement that violates federal law?

5) When an executive agreement violates the explicit will of Congress, then must that executive agreement be enjoined to the extent of the violation?

6) Do the Administrative Procedures Act and the Paperwork Reduction Act require a US federal agency to observe the formalities of informal (or formal) rulemaking when it imposes a new paperwork requirement on commercial transactions?

7) Do the regulations of the Federal Aviation Administration require it to observe the formalities of informal rulemaking that are mandated within the agency's own regulations?

8) Is a federal agency's rule-change considered to be arbitrary and capricious when the agency offered no prior or contemporaneous justification for the change?

9) Where a federal agency implements a substantive change from past practice and fails to distinguish the reason for the change, then does this vitiate the deference the reviewing court would otherwise show?

10)      Is a US Federal Agency prohibited from implementing a paperwork requirement that violates the Paperwork Reduction Act and that penalizes parties?

## Reference to Appendix and Addendum

Pertinent elements of the record are set forth in a separately bound appendix. References to this appendix will be in the form "App'x at <<page#>>."

Pertinent statutes, regulations and other materials are set forth in a separately bound addendum.

## Statement of the Case

### 1. Summary

This case arises from a change published in the FAA-EASA Maintenance Annex Guidance.  App'x at 3.  The language requires US-based repair stations that

also hold European credentials to require certain documentation (an FAA Form 8130-3) as a condition of obtaining aircraft parts.  App'x at 102.  This imposes a penalty on aircraft parts distributors, who sell those aircraft parts, and who now must obtain those documents to sell aircraft parts to those repair stations.

### 2. The Agreement

The Federal Aviation Administration (FAA), on behalf of the United States, has entered into a Bilateral Airworthiness Safety Agreement (BASA) with the European Union's European Aviation Safety Agency (EASA).  The purpose of the BASA is to "enable the reciprocal acceptance, as provided in the Annexes to this Agreement, of findings of compliance and approvals issued by the Technical Agents and Aviation Authorities."  BASA at Art. 2(a)(1).  The BASA is a sole executive agreement - it is not a treaty.

The BASA is implemented through annexes, one of which is the Maintenance Annex.  The Maintenance Annex provides standards for reciprocal acceptance (among the US and EU) of repair stations credentials (repair stations holding both FAA and EASA credentials are known as "dual-certificated repair stations").

The BASA explains that the US and EU will each accept the technical findings of the other in areas covered by the annexes:

15

"[T]he Parties agree that each Party's civil aviation standards, rules, practices and procedures are sufficiently compatible to permit reciprocal acceptance of approvals and findings of compliance with agreed upon standards made by one Party on behalf of the other as specified in the Annexes. The Parties also agree that there are technical differences between their civil aviation systems and they are addressed in the Annexes."  BASA at Art. 5(A).

The US and EU have also agreed that they will each have special conditions listed in appendices to the annexes.  Id.  EASA's 'Special Conditions' are provisions in their regulations that (1) are not common to both systems and (2) are significant enough that they must be addressed.  BASA, Annex 2, ¶ 2.5 (defining "special conditions").

The Maintenance Annex states that a dual-certified repair station in the US must comply with both US standards and also the EASA special conditions agreed-upon in the Maintenance Annex.  BASA, Annex 2, ¶ 4.4.1 (Maintenance Annex).  For example, one special condition states that when the repair station's work is complete, the repair station will approve and release that work by signing an 8130-3 tag.  BASA, Annex 2, App'x 1, ¶ 1.1.1(b)(iii) (EASA special condition concerning approval for return to service).

These special conditions do not specify any required documentation for parts that the repair station receives.  See BASA, Annex 2, App'x 1, ¶ 1 (the EASA special conditions, which do not include any documentation requirements for parts received by a repair station).  Therefore, under the plain language of the bilateral agreement, no additional documentation is necessary when a repair station receives

16

aircraft parts for installation.

FAA and EASA have published a Maintenance Annex Guidance, which is commonly known in the aviation industry as the MAG. The MAG is an implementation document for the BASA Maintenance Annex. Historically, the MAG has described how FAA and EASA will share data and responsibilities. In the revisions at issue in this case, though, FAA and EASA imposed new documentation requirements on aircraft parts transactions. This was a wholly new standard, that was not previously published in the MAG, the BASA Maintenance Annex, the BASA, nor the regulations of either FAA or EASA.

This appeal seeks review of the documentation requirements of the MAG. It also seeks review of Notice 8900.360. Notice 8900.360 established October 1, 2016 as the effective date of the MAGs documentation requirements, and it established a 'grandfather provision' for parts that were already in a repair station's inventory before October 1. Throughout this Brief, the arguments raised about the MAG also apply to the Notice. To make this easier to read, we will reference only the MAG, but such references also should be read to include the Notice to the extent the Notice affects the implementation of the MAG's documentation requirements.

17

### 3. Administrative Process

The MAG documentation requirements were issued without notice; and without opportunity for the public to comment on the language.  As the record reveals, no prior nor contemporaneous reason was published for the MAG documentation changes - not in the MAG and not in any descriptive text associated with the record underlying the MAG (however, the FAA has offered a *post hoc* rationale as part of its litigation position).

The Statement of the Case could end here, as the Court's obligation is to judge the orders on their merits based on the record.  There is no evidence in the record that the FAA considered any competing views – or for that matter any facts or matters at all – when it promulgated the MAG documentation requirements.  FAA and EASA did not add these requirements to the list of special conditions in the Maintenance Annex and nothing in the Maintenance Annex can reasonably be interpreted to provide a foundation for such requirements.

Nonetheless, it is useful to understand the context of the orders and their effect on the industry.

18

### 4. The Documentation Requirement

The MAG obliges US-based repair stations to draft and implement written procedures (in their EASA Supplements) requiring that aircraft parts be accompanied by specific documentation.  Under the terms of the MAG, a new aircraft part produced in the US (by FAA production approval holders) cannot be accepted by a repair station unless it is accompanied by an 8130-3 tag.

This is a practical problem because aircraft part manufacturers do not have to issue 8130-3 tags for their parts.  The FAA proposed that manufacturers issue such tags as birth records for parts.  Production and Airworthiness Approvals, Part Marking, and Miscellaneous Amendments, 71 Fed. Reg. 58,914, 58,918 (Oct. 5, 2006) (Proposed Rule), but that proposal was abandoned in the face of adverse comments.  Production and Airworthiness Approvals, Part Marking, and Miscellaneous Amendments, 74 Fed. Reg. 53,368, 53,371 (Oct. 16, 2009) (Final Rule).  So the FAA has failed to lay a foundation for uniformly creating the documentation (due to industry opposition to the 8130-3), and therefore obtaining such paperwork can be difficult.

This documentation standard is also novel, and it varies from existing legal requirements both in the US and in the EU, as discussed under the next heading. The fact that it is novel creates a number of legal issues that are described in the Argument.

### 5. The MAG Documentation Requirement Adversely Affects the Industry Because it Follows Neither US nor EU standards

Under current US standards, no documentation is required in order to receive an aircraft part into inventory. See, e.g., App'x at 139 (FAA Chief Counsel's Interpretation Letter stating "there is no Federal Aviation regulation that requires *traceability* of an aircraft part to its origin" and explaining that parts may be found airworthy based on documentation, markings, or inspection and testing). The repair station may install the part as long as it confirms that the article will return the product to a condition "at least equal to its original or properly altered condition." 14 C.F.R. § 43.13.

The European system is a bit different. The European aviation system's regulations are published by the European Parliament and implemented by EASA. The European system distinguishes parts into six different categories, but for purposes of this brief only two are relevant.

The first is "serviceable parts." Serviceable parts must be accompanied by the European manufacturer's document known as the EASA Form One, or an equivalent document. App'x at 131 (EASA 145.A.42(a)(1)). EASA has recognized that the FAA 8130-3 tag is an equivalent document for receipt purposes (when signed on the left side). EASA AMC M.A.501(a) ¶ (5)(a) (documents under the terms of a bilateral agreement); Technical Implementation Procedures for

20

<u>Airworthiness and Environmental Certification Between the FAA of the USA and</u> <u>EASA of the EU</u>, ¶ 5.1.10 (Rev. 5 Sept. 15, 2015) (implementing the bilateral agreement and calling-out the 8130-3 as an equivalent document).

Until the MAG, an FAA 8130-3 tag has always been an *optional* document for US transactions. <u>E.g.</u> App'x at 132 (FAA Order 8130.21H, CHG 1, ¶ 2-4(a)). There are many existing aircraft parts in inventories that do not bear the 8130-3 tag. <u>See</u>, <u>e.g.</u>, <u>Michele Dickstein Aff.</u> at ¶ 16 [this affidavit in support of the standing argument can be found in the Addendum].

Because there are many articles produced by US manufacturers that do not bear 8130-3 tags, a provision allows European repair stations to accept articles without such documentation.

The EASA regulations permits "unserviceable parts" to enter into a repair station without documentation when they are intended to be maintained. App'x at 131 (EASA 145.A.42(a)(2)). The European definition of "unserviceable" includes articles that are missing "necessary information to determine the airworthiness status or eligibility for installation." App'x at 130 (EASA M.A.504(a)(3)). Thus, any new aircraft part that is missing an EASA Form One or 8130-3 (whichever is appropriate) is deemed unserviceable and can enter a repair station without documentation. Such an article may then be inspected to serviceable condition and

installed if it passes inspection. See, e.g., EASA AMC M.A.501(a) (*Installation*); EASA AMC M.A.613(a) (*Component certificate of release to service*).

The problem with the MAG is that it closes the safety valve that allows acceptance of new parts without an 8130-3 or EASA Form One. It does this by establishing two different categories that are inconsistent with the "serviceable/ unserviceable" categories established under European law. The two categories are "new" and "used." Under existing European law, a new part without the correct documentation can be received as unserviceable, and subsequently inspected to serviceable condition, but under the MAG, a new part is required to have an 8130-3 or a Form One (from either the EU or Canada). There is no exception under the MAG for new parts without the designated documentation – they are simply excluded.

This exclusion closes an important safety valve that exists in the EU regulations.

6. **Aircraft Parts Transactions**

In the United States aircraft parts system, a manufacturer who wants to produce an aircraft part must usually do so by obtaining a design approval and production approval from the FAA.  14 C.F.R. § 21.8 (there are certain limited exceptions to this requirement, but those are not germane to this discussion).  One of the requirements of a production approval is that the manufacturer of the part

22

must confirm that the part is airworthy at the time it is released from the production

quality system.  14 C.F.R. §§ 21.146(c, e) (requiring all parts released from the

facility to be FAA-approved and requiring these approved parts to conform to

approved design and be in a condition for safe operation); 14 C.F.R. §§ 21.316 (c)

and 21.616(c) (requiring all other FAA-approved aircraft parts to conform to

approved design and be in a condition for safe operation).  All of the parts that we

are talking about in this case are manufactured under FAA production approval,

and thus are known to be airworthy (without any need for recourse to an 8130-3

tag).

New parts are sold to repair stations, air carriers and aircraft parts

distributors.  They may change hands multiple times before being installed in an

aircraft or aircraft component.

Aircraft are typically subject to regular inspection and replacement of parts

in order to maintain their airworthiness.  The inspection and replacement is

typically performed by a repair station.

## **Summary of the Argument**

In the MAG, the FAA imposed a new documentation standard on aircraft parts transactions in the United States.  The FAA also agreed to enforce this standard by refusing to recommend repair stations for dual-certification unless the repair station adopted the standard as a binding part of its enforceable operating-manual system.

This closed the EASA safety valve that permitted the acceptance of US-produced parts without 8130-3 tags.

The FAA offered no constitutional, statutory or regulatory basis for this action at the time the MAG was revised.  Limiting the review to the record, the court must conclude that this action was arbitrary and capricious in that it had no statutory basis.  With no statutory authority in the record to support the MAG documentation standard, it must be struck.

In litigation, the FAA has advanced post-hoc constitutional and statutory bases for this MAG documentation requirements.  Even if the court agrees to consider these extra-record *post hoc* rationalizations, the rationalizations do not support the MAG documentation requirements so they cannot survive a Chevron analysis.  With neither constitutional nor statutory authority to support the MAG documentation standard, it must be struck.

The documentation standard also violated the Congressional intent that was explicitly published in the Paperwork Reduction Act.  Where an agency action lacks constitutional and statutory authority, and is also inconsistent with clear Congressional intent, it must be struck.

The documentation standard violated the Administrative Procedures Act (APA) standards by failing to use notice-and-comment rulemaking when that form of rulemaking was required.  It also violated the APA standards that prohibit arbitrary-and-capricious behavior.

The documentation standard also violated the FAA's own regulatory pledge to use notice-and-comment for all rulemaking actions.

Finally, the ASA membership is experiencing a penalty as a consequence of the MAG documentation requirements, and these requirements did not adhere to the requirements of the Paperwork Reduction Act, so the requirements must be struck to redress the penalty being imposed.

## Standing

An association like ASA has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. E.g. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000); Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

In order to meet this first prong of the association-standing test, at least one member of ASA must satisfy "the three elements that form the 'irreducible constitutional minimum of standing.'" Am. Library Ass'n v. FCC, 401 F.3d 489, 492 (D.C. Cir. 2005 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). These elements are: (1) injury in fact, (2) causation, and (3) redressability. See id. at 492-93 (citing Defenders of Wildlife, 504 U.S. at 560-61).

To satisfy the injury-in-fact prong of the standing test, petitioners need not prove the merits of their case in order to demonstrate that they have standing; in order to establish injury in fact, the petitioners must show that there is a substantial probability that the MAG will harm the concrete and particularized interests of at least one of ASA's members.  See Am. Library Ass'n, 401 F.3d at 493. In this case, injury occurs to the Association's members in at least two ways. First,

26

distributors must spend $50-$500 per 8130-3 tag, or more, for each part that requires a tag. <u>Michele Dickstein Aff.</u> at ¶ 15. A substantial number of parts, sometimes reaching into the millions of units for each member, exist in distributor inventories that do not have 8130-3 tags. <u>Id.</u> at ¶ 16. Second, because the MAG has been implemented at MROs, MROs and other customers have ceased placing orders with distributors and rejected received orders due to a lack of 8130-3 tags on parts. <u>Id.</u> at ¶¶ 11, 14. The MAG directly harms the interests of ASA's members by imposing a new financial burden for 8130-3 tags and precluding sales of parts that do not have those tags.

The Dickstein affidavit also demonstrates the causation element. ASA member sales have been cancelled and lost because of the MAG 6 documentation requirements. <u>Michele Dickstein Aff.</u> at 14. In addition, But for the MAG requirement for each part to have an 8130-3 tag, association members would not be forced to spend $250-$500 per part for tags on all parts.

The element of redressability is met by the court's power to enjoin federal officers from violating the law. <u>Armstrong v. Exceptional Child Ctr.</u>, 575 U.S. _____, 2015 U.S. LEXIS 2329, *9-10 (U.S. 2015). These losses would be redressed by an injunction against FAA enforcement of the MAG.

The second prong the association standing analysis is whether the interests are germane the organization's purpose. ASA is a trade association whose

organizational purpose is, among other things, to support and promote the common business interests of aircraft parts suppliers and to improve the business conditions of its members. <u>Michele Dickstein Aff.</u> at 24; <u>ASA Arts. of Inc.</u> at ¶ 2 (an appendix to the Dickstein Affidavit)). Because of ASA's interests in the common welfare of the aircraft parts distribution industry, the interests at stake are germane to the ASA's purpose.

The claims in this matter do not require the participation of individual ASA members in the lawsuit, because the FAA's actions in enacting and enforcing the MAG, and the resultant harms, can be assessed based on the record before the court; and in fact, such claims must be assessed on the record. <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 50 (1983) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself"). The relief requested is an injunction against FAA enforcement of the underlying MAG – this will generally benefit all aircraft parts distributors, and no particular distributor's participation is required to gain this benefit. Neither the claim nor the relief requires the participation in the lawsuit of an individual member of ASA.

## Argument

### 1. The Court is Authorized to Review the MAG and to Grant a Remedy

28

A "rule" is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."  5 U.S.C. § 551(4).  A rule is substantive (rather than interpretive) if it effects a substantive change in existing law or policy (*inter alia*).  Mendoza v. Perez, 754 F.3d 1002, 1021 (D.C. Cir. 2014).  The MAG prescribes binding documentation standards for which there was no precedent (and thus it is not interpreting a prior United States statute or rule), so it is a substantive rule.

The Court of Appeals may review an order of the FAA Administrator, when the petition is brought by a person with a substantial interest in the order.  49 U.S.C. § 46110(a).  For the reasons described under the 'Standing' heading, ASA is a party that has a substantial interest in the MAG, so it may petition for review under 49 U.S.C. § 46110.

The Court of Appeals may grant injunctive relief against government officers who are violating, or are planning to violate, federal law.  Armstrong v. Exceptional Child Ctr., 575 U.S. _____, 2015 U.S. LEXIS 2329, *9-10 (U.S. 2015); e.g. American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 108, 110 (1902) (enjoining the Postmaster when his office took steps ultra vires to its statutory authority – the Court explained that the acts of a US administrative body must be justified by some law, and where a U.S. official violates the law, the courts generally have jurisdiction to grant relief); see also Armstrong 575 U.S.

29

_____, 2015 U.S. LEXIS 2329 at *24-26 (Justice Sotomayor's Dissent, concurring in the majority's opinion that the federal courts may enjoin unconstitutional government action). This is a matter of the courts' long-standing equity jurisdiction. Armstrong 575 U.S. _____, 2015 U.S. LEXIS 2329 at *10. Thus, even where the underlying statute does not grant a private right of action, an action may lie against the U.S. Government to enjoin violations of federal law. E.g. Humane Soc'y of the United States v. Glickman, 217 F.3d 882, 886 (D.C. Cir. 2000) (recognizing past cases enjoining illegal behavior by the Secretary of the Interior, even when the underlying statute contained no provision for judicial review); Va. Uranium, Inc. v. McAuliffe, 147 F. Supp. 3d 462, 468 n.6 (W.D. Va. 2015) (explaining that Armstrong clarifies that a party may invoke a federal court's equitable jurisdiction to enjoin illegal government conduct).

In this case, the MAG documentation provisions violate the Constitution, the Paperwork Reduction Act and the Administrative Procedures Act. Each of these, independently, serves as a violation of federal law that gives rise to the court's power to grant injunctive relief.

### 2.  The MAG Documentation Provisions Violate the Constitution

In promulgating the MAG, the FAA exceeded its statutory and constitutional authority. The actions were ultra vires to the FAA's authority. When an agency acts ultra vires to its authority, the courts are normally available to reestablish the

limits on the agency's authority.  <u>Chamber of Commerce of the United States v.</u>

<u>Reich</u>, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (citing to multiple sources of authority

for the Court's equity jurisdiction to reestablish such limits).

### a.  The Functions Being Regulated Are Commerce

The transactions at issue involve U.S. repair stations obtaining aircraft parts

for their own use in repair station functions - including transactions that are

entirely situated in the U.S.

The fact that the transactions are about aircraft parts makes them Commerce

because aircraft are instrumentalities of interstate Commerce subject to Congress'

Constitutional power to regulate.  <u>United States v. Lopez</u>, 514 U.S. 549, 558-559

(1995); <u>United States v. Bishop</u>, 66 F.3d 569, 588 (3d Cir. 1995).  Congress has

directly regulated parts transactions in the past.  E.g. 49 U.S.C. § 44725 (requiring

safe disposition of life-limited parts removed from an aircraft).  In addition, these

transactions are regular occurrences that cross state lines.  These transactions are

therefore subject to regulation under the Constitution's Commerce clause; these

transactions are Commerce.

### b.  There is No Statutory Authority for the Documentation Elements of the MAG

The MAG is unconstitutional, in that it was an executive action that was

taken (1) without statutory authority (delegation of authority from Congress), and

31

(2) without any basis in the Constitutional authority assigned to the executive.  A federal agency does not have the power to act unless Congress has promulgated a statute that empowers the action. <u>Am. Library Ass'n v. FCC</u>, 406 F.3d 689, 691 (D.C. Cir. 2005); <u>Transohio Sav. Bank v. Dir., Office of Thrift Supervision</u>, 967 F.2d 598, 621 (D.C. Cir. 1992).

The FAA made no prior or contemporaneous claims of statutory authority at the time the MAG was published.  Reading the MAG on the record, alone, there is no statutory basis for the documentation standards imposed through the MAG. The courts typically do not accept a basis for agency action that was first-advanced in litigation.  <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 50 (1983) (explaining that courts may not accept agency counsel's *post hoc* rationalizations for the agency action).  Thus, the MAG should be rejected without further analysis as having no basis in statute.

The FAA, for the first time, made claims about the statutory basis for the MAG in the FAA's Answer to Motions at 3 and 15.  In those motions, the FAA claimed that the legal bases for the MAG were 49 U.S.C. §§ 106(l)(6) and 40104(b).  Even if the court were to entertain these litigation-advanced positions, neither of these provisions authorizes the FAA to set nor enforce documentation standards, nor to create new documentation standards; in fact, neither of them generally authorizes the FAA to enter into any sort of international agreement.

Section 106(l)(6) authorizes the FAA to enter into contracts to carry out *the FAA's own functions*.  E.g. Alinsky v. United States, 415 F.3d 639, 644 (7th Cir. 2005) (explaining that this statute gives the FAA broad authority to contract-out *its own* functions).  It does not authorize the FAA to enter into an agreement with a foreign government to enforce *the foreign government's rules*, nor to enforce wholly new rules that are not part of either the FAA's nor the foreign government's rules (as is the case, here).  There is nothing in this statute authorizing the FAA to set new documentation standards.

49 U.S.C. § 40104(b) permits the FAA to "promote and achieve global improvements in the safety, efficiency, and environmental effect of air travel by exercising leadership" (e.g. within the United Nations' ICAO).  The documentation requirements at issue in this case preclude safe, airworthy parts from being used based solely on their failure to bear a specific document (which may be impossible to acquire in some cases); nothing about the MAG's documentation requirement reflects an improvement in the safety, efficiency, or environmental effect of air travel.  In fact, by preventing the use of safe parts based solely on a novel documentation scheme, the FAA has introduced inefficiencies into the system, and has undermined safety to the extent that acceptably-documented parts (i.e., approved parts bearing a manufacturer's Certificate of Conformity, the industry standard) may become unavailable for maintenance purposes.  Thus, the MAG

documentation requirements appear to undermine the intent of 49 U.S.C. § 40104(b).

Nowhere in the FAA's record is there any claim that the documentation requirements make an improvement consistent with the goals of 49 U.S.C. § 40104(b), and there is nothing in this statute authorizing the FAA to set new documentation standards.

Section 40104(b) offers no authority to enter into any agreement affecting Commerce. When Congress wants to grant to the FAA authority to enter into an international agreement affecting commerce, it does so explicitly. Compare 49 U.S.C. § 40104(b) (offering no authority to enter into an agreement) with 49 U.S.C. § 40105(a) (explicitly permitting FAA to enter into "an agreement with a government of a foreign country to establish or develop air navigation"). Because Congress is explicit when it grants the FAA the authority to enter into international agreements, a statute that does not provide this sort of explicit authority for international agreements should not be construed to imply such authority in contravention to the statutory norms for such delegated authority.

Subsection 40104(b) does not authorize either an agreement nor the enforcement of novel documentation standards on domestic transactions, and reading it to permit such acts would permit the FAA to use this statute as the basis

for circumventing <u>any</u> Congressional standard simply by agreeing to do so with a foreign regulator.

As discussed in section 3.d of this Argument, the FAA is not entitled to <u>Chevron</u> deference of any alternate reading of these statutes, because a reading that permits the MAG documentation elements to stand would violate the clearly-stated Congressional intent of the Paperwork Reduction Act.  E.g. <u>MCI Telecomms. Corp. v. Am.Tel. & Tel. Co.</u>, 512 U.S. 218, 229 (1994) (striking down an FCC ruling that conflicted with Congressional intent); <u>Aid Ass'n for Lutherans v. United States Postal Serv.</u>, 321 F.3d 1166, 1178 (D.C. Cir. 2003) (refusing to grant deference to an agency statutory interpretation that contradicted clear Congressional intent).

The documentation standards of the MAG are therefore without statutory authority, were without statutory authority when they were promulgated, and are now ultra vires to the statutory authority that the FAA *now* claims serves as the basis for the MAG.

### c. The Executive Branch Does Not Have Constitutional Authority for the Documentation Elements of the MAG

The FAA did not make a prior or contemporaneous claim of Constitutional authority to enter in to the MAG's documentation provisions, and so the court (limiting its analysis to the record) should ignore any *post hoc* rationalization advanced by the FAA in litigation.  E.g., Motor Vehicle Mfrs. Ass'n, 463 U.S. at 50 (explaining that courts may not accept agency counsel's *post hoc* rationalizations for the agency action).

The FAA also now claims that the basis for the MAG was "the President's foreign affairs authority under Article II of the United States Constitution."  FAA's Answer to Motions at 3, 15.  Even if the court permits the FAA to advance this litigation position, the position is incorrect.[1]  The functions being regulated are Commerce, and absent explicit Congressional authority, the President's Constitutional authority alone does not permit the executive branch to regulate foreign or domestic Commerce. United States v. Yoshida Int'l, 526 F.2d 560, 572 (C.C.P.A. 1975) ("It is nonetheless clear that no undelegated power to regulate commerce … inheres in the Presidency").  This is because "the power to regulate

---

[1] In addition to the Executive's very limited ability to regulate commerce (limited only to the authority delegated by Congress), Judges from this Circuit have opined that "[e]xtending to internal affairs the President's inherent power over external affairs has dangerous implications."  Briehl v. Dulles, 248 F.2d 561, 590 (D.C. Cir. 1957) (Dissent by J. Bazelon).

36

interstate and foreign commerce is not among the powers incident to the

Presidential office, but is expressly vested by the Constitution in the Congress."

United States v. Guy W. Capps, Inc., 204 F.2d 655, 659 (4th Cir. 1953).

### 3. The MAG is a Sole Executive Agreement that Violates the Will of Congress (thereby offending Due Process) as and as Such it Cannot Be Sustained

#### a. When the Executive Acts in Contravention to Congress, it's Power is at its Lowest Ebb

The Supreme Court has explained that the executive branch's power to

regulate is at its lowest ebb when the executive branch acts in contravention of the

will of Congress.  Dames & Moore v. Regan, 453 U.S. 654, 669 (1981);

Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 637-38 (1952).  Even if

the executive agreement yields a result that is more desirable than the

Congressional statute, the courts have said that the Congressional standard still

must prevail. United States v. Guy W. Capps, Inc., 204 F.2d 655, 660 (4th Cir.

1953).

#### b.  The MAG is a Sole Executive Agreement

An executive agreement that has no specific Congressional authority is

known as a sole executive agreement.  The MAG is a sole executive agreement

because there is no independent Congressional authority that explicitly authorizes

the MAG.  <u>See</u> section 2.b of this Argument.

### c.  The MAG Documentation Requirements Violate the Spirit of the Paperwork Reduction Act

The Paperwork Reduction Act (PRA) established Congressional policy to

"minimize the paperwork burden … resulting from the collection of information by

or for the Federal Government."  44 U.S.C. § 3501(1).  In fact, Congress was so

intent on enforcing this policy that it included a clause that permits any person

subject to a penalty related to a non-conforming paperwork requirement to assert

the Act as a complete "defense, bar, or otherwise" in any administrative or judicial

action applicable thereto.  44 U.S.C. § 3512.

In order to accomplish the goal of minimizing paperwork for the public, the

PRA requires that an agency solicits comments on the documentation requirement.

(44 U.S.C. § 3506(c)(2)).  and evaluates those comments (44 U.S.C. §

3507(a)(1)(B)).  The PRA requires that an agency submit any paperwork

requirements to the White House Office of Management and Budget (OMB).  (44

U.S.C. § 3507(a)(1)(C)).  It must be supported by analysis.  44 U.S.C. §

3506(c)(3).  The agency must certify to the OMB that the documentation

requirement "is necessary for the proper performance of the functions of the

agency, including that the information has practical utility."  44 U.S.C. §

3506(c)(3)(A).  None of this was accomplished for the MAG documentation requirements.

In the case of the 8130-3 tag requirement, the FAA has issued definitive interpretations explaining that the FAA has no documentation requirement for parts transactions.  E.g., App'x at 139-140.  The FAA attempted to lay a foundation to require the tag in 2006 by proposing that all FAA-approved manufacturers issue the tag with all new parts.  Production and Airworthiness Approvals, Part Marking, and Miscellaneous Amendments, 71 Fed. Reg. at 58,918. But this effort was abandoned in the final rule in the face of adverse comments.  Production and Airworthiness Approvals, Part Marking, and Miscellaneous Amendments, 74 Fed. Reg. at 53371. This prior effort shows that the FAA recognizes the imposition of 8130-3 requirements as a substantive change and that the FAA knows that notice-and-comment is the right process for imposing an 8130-3 tag requirement on the public.

The tag has previously been the subject of an OMB approval for export transactions only – and not for domestic transactions (e.g. ICR-OIRA Conclusion 201010-2120-001 (August 8, 2011)) but that OMB approval was surrendered in 2010-2011 when the FAA decided that there was no private sector burden associated with obtaining export tags.  ICR-OIRA Conclusion 201010-2120-001 (August 8, 2011) (including FAA Supporting Statement).  This prior (and now-

abandoned) approval shows that the FAA knows that OMB approval is required for imposing an 8130-3 tag requirement on the public.

Now, having previously abandoned an effort to mandate the 8130-3 at the onset of commercial transactions, the FAA has suddenly – and without due process - imposed a requirement for the 8130-3 tag to be present for commercial transactions in the middle of the chain of commerce.

NOTE: this discussion addresses the relationship between the FAA's action and Congressional intent - the discussion of the specific violations of the Paperwork Reduction Act is found in section 4 of this Argument.

### d. The MAG Documentation Requirements Cannot Survive a Chevron Analysis

In Chevron, the Supreme Court created a two-step inquiry for assessing executive interpretations of law. Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837 (1984).  The first inquiry is whether Congress has directly decided the precise question at issue.  If not, the second inquiry is whether the agency's decision is "permissible" in the sense that it is reasonable.

In this matter, the precise question at issue is whether the FAA may impose a documentation requirement without following the procedural requirements mandated by Congress.

When Congress unambiguously forbids an agency action, then contrary agency actions are entitled to <u>no</u> deference under the Chevron Analysis.  <u>Barnhart v. Walton</u>, 535 U.S. 212, 217-18 (2002).  In the case at bar, Congress has directly decided the precise question at issue: Congress has issued the Paperwork Reduction Act, with explicit prerequisites for imposing documentation requirements on private sector transactions.  Those prerequisites applied to the MAG documentation requirements, but the FAA failed to meet them for the MAG documentation requirements.  <u>See</u> Sections 3.c and 4 of this Argument (explaining this failure to meet statutory requirements).  Thus, it appears that Congress has spoken directly to this issue, and has issued both explicit requirements, and also statements of policy, that demonstrate that the requirements were meant to apply to situations like the one at bar.  There is no exception to the Paperwork Reduction Act that would seem to apply here.  So on the first prong of the <u>Chevron</u> test, the FAA's MAG documentation requirements appear to deserve no deference by the court.  According to Chevron, this should be the end of the analysis.  <u>Chevron, U.S.A., Inc. v. NRDC, Inc.,</u> 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress").

But even if the court were to ignore the fact that Congress has already spoken on this documentation issue when it issued the Paperwork Reduction Act,

41

the second test of the Chevron analysis – which asks whether the agency's decision

is "permissible" in the sense that it is reasonable – also belies any claims to

<u>Chevron</u> deference.

 A reading that grants deference to the MAG documentation requirements

would violate the strong Congressional intent found in the Paperwork Reduction

Act.  A reading that grants deference to the process used by the FAA (imposing a

documentation requirement on commercial transactions through a sole executive

agreement) would violate the strong Congressional intent favoring notice-and-

comment rulemaking and opposing arbitrary-and-capricious actions, which are

both found in the Administrative Procedures Act.  <u>See</u> section 5 of this Argument.

The FAA is not charged with administering either of these Acts, so the FAA's

interpretation of either of these Acts is generally not binding.

 Finally, the FAA cannot find a reasonable interpretation of the two *post hoc*

rationalizations that would support the MAG documentation requirements.  There

is nothing in either 49 U.S.C. §§ 106(l)(6) nor 40104(b) authorizing the FAA to set

new documentation standards, nor authorizing an international agreement.  <u>See</u>

section 2.b of this Argument.

   **e. The Court of Appeals Cannot Sustain the FAA's Actions by
Disabling Congress from Acting**

42

Having acted in contravention to the express Congressional intent found in the Paperwork Reduction Act, the executive's power to regulate is at its lowest ebb.  Dames & Moore v. Regan, 453 U.S. 654, 669 (1981); Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 637-38 (1952).  When this is the case, then "the Court can sustain his actions only by disabling the Congress from acting upon the subject."  Id.

In this case, there is no basis for finding that Congress could not regulate this activity; it is, after all, garden-variety Commerce.  Congress simply has not chosen to impose a paperwork requirement for domestic aircraft parts transactions like this, nor has it enabled the FAA to establish such standards through an international agreement.  There is therefore no basis for disabling Congress from acting in this area of Commerce, so the documentation requirements remain within Congress' legislative discretion and FAA's actions cannot be sustained.

**4.  The MAG Documentation Requirements Violates the Requirements of the Paperwork Reduction Act**

The MAG and the Notice require that dual-certified repair stations collect documentation as a condition to accepting aircraft parts; if they fail to do so then the FAA will penalize the repair station by recommending a suspension or revocation of its EASA certificate. The MAG and the Notice also impose a correlative requirement on aircraft parts distributors to obtain and provide this

43

documentation – or else they will be penalized by being effectively enjoined from selling those parts to dual-certified repair stations.

Each of these documentation requirements is a collection of information and record-keeping operation under the Paperwork Reduction Act (hereinafter "PRA"). 44 U.S.C. § 3502(3, 13). A federal agency is said to "conduct or sponsor" a collection of information when it requires a person to provide information to another person. 5 C.F.R. § 1320.3(d). Thus, the imposition of a limit that forbids a repair station from accepting and using a part unless it bears an 8130-3 tag, and the correlative requirement on the seller to provide the documentation, reflect an FAA conduct of an information collection activity.

The PRA applies to information collections and recordkeeping requirements that apply to ten or more persons, and this includes any collection of information addressed to all or a substantial majority of an industry. 5 C.F.R. § 1320.3(c)(4)(ii). The MAG applies to all commercial aircraft parts distributors (who can no longer sell parts without 8130-3 or EASA Form One), including the over-ten who filed affidavits in this case. The minimum standard for PRA application is therefore met.

An information collection subject to the PRA must follow the process described in 44 U.S.C. § 3507. This includes, *inter alia*, obtaining an OMB Control Number and placing the number on the collection. 44 U.S.C. §§ 3507(a)(3),

3512(a).  Although the FAA formerly had an OMB control number for the 8130-3 tag, the OMB approval only applied to the use of the tag for export transactions, and the FAA surrendered that OMB approval in 2010.  See section 3.c of this Argument.

The MAG creates a new public burden associated with the 8130-3 tag.  The publication of the MAG requirements by the FAA violated the PRA requirements, including (but not limited to) the FAA's failure to obtain a valid OMB control number for the domestic use of the 8130-3 tag, and FAA's failure to inform affected parties (both aircraft parts distributors and repair stations) that they are not required to comply without a valid OMB control number. When this specific failure occurs, then the agency is not permitted to subject a person to a penalty for failure to comply with the information collection. 44 U.S.C. § 3512.

Under the PRA, a penalty includes "the revocation, suspension, reduction, or denial of a license, privilege, right, grant, or benefit." 5 C.F.R. § 1320.3(j).

The PRA offers a very broad power to raise its defenses to protect against PRA misuse: "The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto."  44 U.S.C. § 3512(B) [emphasis added].  The Legislative record of the PRA make it clear that the language was drafted as broadly as possible in order to maximize public protection:

"The House amendment contains a provision which clarifies and strengthens the Act's current 'public protection' provision by enabling a person to assert this protection at any time during an agency administrative process *or any subsequent judicial review of an agency action involving a penalty*."  H. Rep't 104-99 (Conference Report) p. 36 ¶ 30 [emphasis added].

In this case, the administrative process that has caused a penalty is the issue of the MAG itself, which creates for repair stations the Hobson's Choice of compliance with the MAG (which requires them to seek documentation as a condition of their commercial transactions) or loss of their EASA certification at the hands of the FAA.  A distributor of aircraft parts is subject to a penalty in that the implementation of the MAG's documentation requirements is preventing, and will prevent, such a distributor from selling US-produced aircraft parts to dual-certified repair stations in the US without the now-MAG-required 8130-3.  The penalty caused by the MAG - in the form of blocked sales and delays and costs to obtain the documentation where available - has already been felt by aircraft parts distributors.

Although the PRA itself does not give rise to a private right of action, the general right to enjoin the government from acting in contravention to federal law permits a remedy.  Armstrong v. Exceptional Child Ctr., 575 U.S. _____, 2015 U.S. LEXIS 2329, *9-10 (U.S. 2015) (recognizing the equitable authority but finding that the statute in that case provided an explicit bar to the use of that authority).  The FAA's own review statute (49 U.S.C. § 46110) provides

jurisdiction for review.  So the PRA need only provide an objective standard

against which to measure federal compliance, and need not provide an independent

cause of action (it would be, in that way, analogous to Armstrong's pronouncement

of the Supremacy clause as a mere rule of decision).

The DC Court of Appeals has explained that, to fulfill the Congressional

intent behind the PRA, "the PRA must protect a member of the public when the

agency imposes the paperwork burden upon it, not merely when the agency relies

upon the paperwork in making a decision, which … can be years later." Saco

River Cellular v. FCC, 133 F.3d 25, 32 (D.C. Cir. 1998).  Because of the already-

occurring chilling effect on the public's rights, the only way to prevent these

already-being-felt penalties from being assessed would be to enjoin enforcement

by the United States of the MAG.

## 5. The MAG Documentation Requirements Violated the Administrative Procedures Act

### a. The MAG Documentation Requirements Violated the Administrative Procedures Act Notice-and-Comment Requirements

The APA sets the minimum requirements for rulemaking; these include

notice-and-comment requirements.  5 U.S.C. § 553(b-c).  This means that a

proposed rule must be published in the Federal Register.  5 U.S.C. § 553(b).  The

public must have an opportunity to comment.  5 U.S.C. § 553(c).  The agency must

47

consider the relevant material presented.  Id.  The agency must also publish the

basis and purpose of the rule.  Id.  The APA requires notice-and-comment for all

substantive rules:

> "If a new agency policy represents a significant departure from long
> established and consistent practice that substantially affects the regulated
> industry, the new policy is a new substantive rule and the agency is obliged,
> under the APA, to submit the change for notice and comment."  Shell
> Offshore Inc. v. Babbitt, 238 F.3d 622, 630 (5th Cir. 2001).

The FAA did not use notice and comment rulemaking in order to promulgate

the MAG documentation standard, so it violated this APA requirement.

The APA permits an exception for interpretive rules.  An interpretative rule

is the administrative construction of a statutory provision.  Pickus v. United States

Bd. of Parole, 507 F.2d 1107, 1113 (D.C. Cir. 1974).  The United States currently

does not require any specific documentation in aircraft parts transactions – not in

regulations and not in any statute.  Thus there is no prior documentation statute to

interpret – nor is there any FAA regulatory standard to interpret (because the FAA

has specifically forborne from prior documentation standards, see, e.g., 74 Fed.

Reg. at 53,369).  Therefore the documentation requirements of the MAG cannot be

an interpretive rule.  In addition, the courts have distinguished interpretive rules

from substantive rules – those which impose obligations – and the MAG clearly

imposes an obligation to obtain documentation that was not previously required.

See Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan, 979 F.2d 227, 237

48

(D.C. Cir. 1992) (distinguishing interpretive rules from substantive rules). This means that the APA's exception for interpretive rules – which was discussed in Perez v. Mortgage Bankers - does not insulate the FAA from the requirement for notice-and-comment in this particular case.

There is also a foreign affairs function exception to the Administrative Procedures Act's Notice and Comment provisions; however that exception does not apply in this case. In analyzing APA exceptions, the courts have continually stated that any claims of exemption from rulemaking procedures will be construed narrowly and granted reluctantly. Mast Indus. v. Regan, 596 F. Supp. 1567, 1582 (Ct. Int'l Trade 1984) (relying on Envtl. Defense Fund v. Gorsuch, 713 F.2d 802, 816 (D.C. Cir. 1983) and United States Steel Corp. v. EPA, 595 F.2d 207, 214, modified on rehearing, 598 F.2d 915 (5th Cir. 1979)). In this case, the issue that has been inserted into the MAG is a requirement for specific documentation (8130-3 tag) when a U.S. repair station obtains an aircraft part that was produced in the United States. This is direct regulation of transactions that are wholly within the jurisdiction of the United States. This is not reasonably related to foreign affairs.

In addition, though, the fact that the FAA has acted contrary to the intent of Congress also precludes the agency from relying on these exceptions. When an agency acts ultra vires to its authority, the courts are normally available to reestablish the limits on the agency's authority. Aid Ass'n for Lutherans v. United

States Postal Serv., 321 F.3d 1166, 1173 (D.C. Cir. 2003).  This rule of

reviewability for *ultra vires* acts continues to apply even when the APA appears to

otherwise preclude review!  Id.  Therefore, none of the APA exceptions can be

used to preclude review of this *ultra vires* action.

### b.  The MAG Documentation Requirements Violated the 'Arbitrary and Capricious' Standard of the Administrative Procedures Act

A reviewing court must set aside agency actions that are arbitrary and

capricious.  5 U.S.C. § 706(2)(A).

An agency has an obligation to cogently explain why it has exercised its

discretion in a given manner.  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto.

Ins. Co., 463 U.S. at 48. The agency must describe the available evidence, and

must offer a "rational connection between the facts found and the choice made."

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 52.

The MAG failed to offer a cogent explanation for the imposition of the

documentation requirements of the MAG, nor even to offer any evidence or

discussion related to the imposition of the requirement.  If the FAA fails to

"cogently explain why it has exercised its discretion in a given manner," then its

decision must be arbitrary and capricious.  Int'l Ladies' Garment Workers' Union v.

Donovan, 722 F.2d 795, 815 n. 35 (D.C. Cir. 1983) (relying on Motor Vehicle

Mfrs. Ass'n).  Based on the prior and contemporaneous record, which failed to

offer a cogent explanation supporting the documentation requirements, the MAG

documentation requirements are arbitrary and capricious.

      In addition, the FAA has previously admitted that documentation is not a

requirement for parts.  E.g. App'x at 139 (Letter from Rebecca McPherson to

Jason Dickstein (August 6, 2009) (explaining that parts without documentation can

be inspected to ensure their airworthiness)).  This admission was part of the record

upon which the FAA relied.  See id (the letter was part of the FAA's certified

record).  In the MAG, the FAA failed to explain why it was adopting a requirement

that mandated 8130-3 tags for US-produced parts.  Because this was a substantial

change from past practice, it was a substantive change and not a mere interpretive

rule.  "Where an agency fails to distinguish past practice, its actions may indicate

that lack of reasoned articulation and responsibility that vitiates the deference the

reviewing court would otherwise show."  Acadian Gas Pipeline Sys. v. Fed.

Energy Regulatory Com., 878 F.2d 865, 868 (5th Cir. 1989) (finding that the

failure to distinguish past practice, in the context of a substantive rule, was

evidence that the rule was arbitrary and capricious).

      While the FAA has advanced a reason in its litigation position (FAA Answer

to Motions at 1), that reason must be rejected because it was not advanced in the

MAG itself.  The courts may not accept agency counsel's *post hoc* rationalizations

for the agency action.  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 50.

Even if the court chooses to entertain the FAA's litigation position that the MAG implements a European regulation (FAA Response to Petitioner's Motions at 1), that argument must fail because the standard adopted in the MAG actually violates European law, by closing an important safety valve in the European standards.  See section 5 of Statement of the Case (explaining how the MAG closes the EU safety valve that permitted parts without 8130-3 tags to be accepted, despite the fact that the EU regulations still permit such transactions).  Thus, the FAA could not have been enforcing the European documentation standard because the MAG standard is substantially different from the European standard.[2]

It is also worth noting that the foreign affairs function exception (discussed in section 5.a of this Argument) applies only to 5 U.S.C. § 553, and does not apply to the prohibition against arbitrary and capricious action under 5 U.S.C. § 706.

## 6.  The MAG Documentation Requirements Violated the FAA's Own Notice-and-Comment Requirements

---

[2] Although the Supremacy Clause of the Constitution offers no independent cause of action, it does assert that the Constitution, laws and treaties of the U.S. are the Supreme law of the land, which means that they must take precedence over any European standard, not to mention any sole-executive agreement like the MAG.

52

In addition to the rules established by statute, agencies are free to grant additional procedural rights in the exercise of their discretion.  <u>Perez v. Mortg. Bankers Ass'n</u>, 575 U.S. _____, 2015 U.S. LEXIS 1740, *15-*16 (2015).  When they do so, those additional procedural rights become enforceable.  <u>Way of Life Television Network, Inc. v. FCC</u>, 593 F.2d 1356, 1359 (D.C. Cir. 1979) ("It is a well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action") (relying on <u>Union of Concerned Scientists v. Atomic Energy Comm'n</u>, 499 F.2d 1069, 1082, (D.C. Cir. 1974); <u>Vitarelli v. Seaton</u>, 359 U.S. 535, 539 (1959); <u>Service v. Dulles</u>, 354 U.S. 363, 379 (1957)).  The remedy for a failure to follow the agency's own procedural rules is that the agency action must be reversed or enjoined.  E.g. <u>Dulles</u>, 354 U.S. at 388-89 (1957) (where the government failed to follow its own regulations concerning termination, the resulting termination "cannot stand"); <u>Way of Life</u> 593 F.2d at 1360. (enjoining the FCC from enforcing a cut-off date when the FCC had failed to publish that date, contrary to FCC regulations).

In the case of an FAA requirement that fails to follow the FAA's own rules, this represents an order that is appealable under 49 U.S.C. § 46110.

The FAA has stated in its regulations that it maintains a uniform policy concerning rulemaking:

"Does FAA follow the same procedures in issuing all types of rules?

53

Yes, in general, FAA follows the same procedures for all rule types….
Assume that the procedures in this subpart apply to all rules, except where
we specify otherwise." 14 C.F.R. § 11.23.

The FAA has further established a requirement that when changing its
regulations, it uses informal (notice-and comment) rulemaking procedures. 14
C.F.R. § 11.29. Because the FAA has stated in regulations that it will use the same
procedures in issuing all types of rules (14 C.F.R. § 11.23), the FAA must use
notice-and comment rulemaking procedures when it establishes new, enforceable,
documentation standards.

There are only two exceptions to the FAA's notice-and comment
requirement, and they are spelled-out in the rule. The first arises where the FAA
has good cause for avoiding notice-and-commerce. 14 C.F.R. §11.29(a). The
good cause <u>must</u> be explained in the rule. <u>Id</u>. Such invocation is a requirement.
<u>Envtl. Def. Fund, Inc. v. Envtl. Prot. Agency</u>, 716 F.2d 915, 920 (D.C. Cir. 1983).
No such good cause was explained in the MAG, so the FAA did not avail itself of
the good cause exception.

The FAA also may refrain from notice-and-comment rulemaking if it does
not expect to receive adverse comments. 14 C.F.R. § 11.29(b). The FAA received
adverse comments when it proposed to require 8130-3 tags in 2006. <u>Production</u>
<u>and Airworthiness Approvals, Part Marking, and Miscellaneous Amendments</u>, 74
Fed. Reg. at 53369, 53371 (final rule dispositioning comments from the 2006

NPRM – the rule abandoned the proposal to mandate the 8130-3 in the face of adverse comments, including 46 that said that producing 8130-3 tags would be cost prohibitive).  Based on past adverse comments, it seems logical for the FAA to continue to expect adverse comments related to 8130-3 tag requirements.  Thus, the 'no-expectation of adverse comments' exception also cannot apply.

### 7.  The MAG is an FAA Document that is Enforced by the FAA

The FAA has claimed that the MAG merely states European policy, and that the FAA is not doing anything more than so-stating.  This is incorrect, for six reasons:

### a.  FAA is a MAG Party

The FAA is a party to the MAG's documentation elements.  John Duncan, the Director of the FAA's Flight Standards Service, signed the MAG on behalf of the FAA.  App'x at 4.

### b.  FAA Interprets the MAG

The FAA has the unilateral power to interpret the documentation elements of the MAG.  It has done so by issuing at least three different notices:

- FAA Notice 8900.336 (App'x at 133)
- FAA Notice 8900.360 (App'x at 136)
- FAA Notice 8900.380 (copy found in the addendum)

55

Each of these Notices has established interpretations of the MAG documentation requirements that are at issue in this case. Each Notice was issued solely by the FAA.

### c. FAA is Responsible for Ensuring Compliance with the MAG

The MAG dictates how the FAA (*not the Europeans*) will inspect United States repair stations for compliance to the MAG standards, and instructs US FAA employees in how to enforce MAG standards.

The FAA inspects the repair station's manual (called an "EASA Supplement") for compliance to the MAG. App'x at 79 (MAG § B, ¶ I(3.1)). The FAA inspects the repair station's facility for compliance to the MAG. App'x at 80 (MAG § B, ¶ I(3.2)). If the FAA makes any findings of non-compliance with the MAG (*including the documentation requirements*), then the repair station cannot be certified. App'x at 80 (MAG § B, ¶ I(3.4)). The FAA also inspects repair stations on a continuing basis to ensure continued compliance to the MAG standards. App'x at 84 (MAG § B, ¶ II(2.1)). The MAG is treated as a document whose front-line enforcement is performed by the FAA.

### d. FAA Has the Power to Withhold Privileges for Non-Compliance with the MAG

A repair station that fails to follow the documentation standards of the MAG is subject to punishment.

56

FAA findings of non-compliance with the MAG (*including the documentation requirements*) will preclude initial certification of an applicant. App'x at 80 (<u>MAG</u> § B, ¶ I(3.4)). FAA recommendation of renewal is subject to FAA acceptance of any amendment to the EASA Supplement (including the procedures related to documentation). App'x at 84 (<u>MAG</u> § B, ¶ II(2.1)). If the FAA has findings in its investigation of MAG compliance, then the FAA shall provide EASA with a recommendation against renewal. App'x at 86 (<u>MAG</u> § B, ¶ II(4.3)). EASA may elect to non-renew, or to suspend the EASA approval. <u>Id.</u> A suspension typically lasts until a plan for corrective action has been accepted by the FAA (not by EASA). <u>Id.</u> It is expected that the FAA will initiate a letter of investigation, which is the first stage in FAA enforcement actions. <u>Id.</u> at note.

This threat of punishment has been effective in causing repair stations to adopt the documentation standards in the MAG. They, in turn, have rejected parts that do not have the newly-required documentation. The result has been a *de facto* penalty illegally levied against distributors of aircraft parts who are now unable to sell aircraft parts without 8130-3 tags to US-based dual-certified repair stations.

### e. Actual Implementation Has Enacted a Penalty Against Distributors

The actual implementation of the new documentation standards has been effective in forcing U.S.-based dual-certificated repair stations to adopt

requirements for 8130-3 tags for parts produced in the United States.  This has

caused a chilling effect on transactions without documentation.  Distributors are

being penalized in that they are precluded from selling their existing U.S.-produced

aircraft parts (that do not have 8130-3 tags) to U.S.-based dual-certificated repair

stations.

### f.  The MAG Documentation Requirement Does Not Reflect European Regulations

Finally, as discussed in the section 5 of the Statement of the Case, the EASA

regulations include a safety valve, and that safety valve was closed by the MAG

documentation requirements.  Therefore, the MAG is not consistent with the

European regulations, so the FAA cannot claim that they were merely

implementing European regulations.

### 8.  The MAG's Documentation Standard has a Prejudicial Effect on U.S. Commerce That Has Been Documented in the Federal Register

The FAA has previously attempted to require U.S. manufacturers to issue

8130-3 tags with all new aircraft parts.  The proposal was withdrawn in 2009.

Consequently, new aircraft parts produced in the U.S. do not necessarily get 8130-

3 tags.

One of the reasons given for the withdrawal was that "airworthiness

approvals [8130-3 tags] are often separated from the product or article when it is

received by the end user, nullifying the safety aspect of increased traceability."

<u>Production and Airworthiness Approvals, Part Marking, and Miscellaneous</u>

<u>Amendments</u>, 74 Fed. Reg. at 53,371. Thus, the FAA recognizes that many

aircraft parts in the aviation system do not have 8130-3 tags, and they are

nonetheless airworthy parts. They also recognized that modern business practices

conflict with the FAA's efforts to increase traceability of aircraft parts.

In the 2009 withdrawal, the FAA also recognized that producing 8130-3 tags

is costly. <u>Id.</u> at 53,371. This cost does not disappear when the burden is shifted to

distributors to obtain such tags as a condition of doing business with repair

stations. As illustrated in the affidavits supporting the <u>Motion For Stay Pending</u>

<u>Appeal</u>, there is a considerable cost to a distributor to obtain an 8130-3 tag.

Therefore, these costs represent a prejudicial effect on the commercial business

relationships between US aircraft parts distributors and US repair stations.

**9. The FAA Has Attempted (Ineffectively) to "Undo" the MAG Documentation Standard – this Effort was Ineffective, but it Demonstrates an FAA Admission that the MAG Imposes a Substantive Effect**

The most recent interpretation of the MAG is FAA Notice 8900.380 (which

can be found in the Addendum). That Notice actually reopens the "safety valve"

on a temporary basis (analogous to a temporary stay of the provision). Until

August 26, 2017, the Notice permits U.S. repair stations to accept aircraft parts without 8130-3 tags, and to inspect them (as had previously been the norm).

Unfortunately, this Notice has been ineffective in providing a remedy, and therefore does not moot the appeal.  First of all, many repair stations had already changed their manuals and obtained FAA approval of those changes, before the Notice was issued.  These repair stations are required to follow those FAA-approved manuals, and appear to be reticent to change their manuals again to reflect a temporary Notice.

Most importantly, the Notice is only temporary.  It expires August 26, 2017.  When it expires, the MAG will still exist, in full force and effect.[3]

## CONCLUSION

Where an agency rule goes beyond statutory authority, the agency should be prevented from enforcing the rule.  E.g. MCI Telecomms. Corp. v. Am.Tel. & Tel. Co., 512 U.S. 218 (1994) (disallowing an FCC tariff action that went beyond FCC's statutory authority – the ruling was affected by a subsequent statute

---

[3] The Notice promises that it will be incorporated in revision seven of the MAG; however, this does not oblige the FAA to promulgate a revision seven, so there is no way to enforce such a pledge – as a consequence, this pledge does not render the Notice to be anything more than a temporary stay of the enforcement of the MAG documentation requirements.

authorizing FCC action); <u>Aid Ass'n for Lutherans v. United States Postal Serv.</u>, 321 F.3d 1166, 1173 (D.C. Cir. 2003) (striking down a postal rule that went beyond the postal service's statutory authority).

Where an agency rule is not validly prescribed, the agency must be enjoined from enforcing the rule. <u>Guerra v. Meese</u>, 614 F. Supp. 1430, 1437 (D.D.C. 1985) (enjoining the Parole Board from applying provisions that were promulgated in violation of the APA); <u>Nat'l Wildlife Fed'n v. Clark</u>, 577 F. Supp. 825, 829 (D.D.C. 1984) (ordering the Interior Department to be "stayed, enjoined, and restrained" from entering into coal lease agreements on federal land until it changes its relevant regulation through notice-and-comment rulemaking). In this case, the violations of procedural rules for promulgating the rules should be remedied through an injunction against publishing or enforcing a documentation requirement on any aircraft parts transactions unless such a requirement has been promulgated in accordance with appropriate federal requirements.

For these reasons, ASA requests that the court enjoin the Respondents from enforcing the documentation requirements which require receipt of 8130-3 tags for aircraft parts as a condition of using those parts, that are found in the Maintenance Annex Guidance and in Notice 8900.360.[4]

---

[4] A non-final interim version of the MAG – MAG revision 5 – was issued but was supplanted by MAG rev. 6 before the documentation requirements of revision 5 could be implemented. ASA also asks that the court's order prohibit the

RESPECTFULLY SUBMITTED this 24th day of October, 2016.

WASHINGTON AVIATION GROUP, PC AND THE
LAW OFFICES OF JASON A. DICKSTEIN

By_____

Jason Dickstein
Washington Aviation Group, PC and the
Law Offices of Jason A. Dickstein
2233 Wisconsin Avenue NW
Suite 503
Washington, DC 20007
jason@washingtonaviation.com
Tel: (202) 628-6777
Fax: (202) 628-8948
Counsel for Appellant Aviation Suppliers Association, Inc.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 11,081 words (excluding words that do not

need to be counted under FRAP 32(a)(7)(B)(iii)).

October 24, 2016                    _____
Date                                      Jason Dickstein, Attorney for Appellant

_____

FAA from reverting to MAG rev. 5 and implementing the documentation
requirements of that version (as they were even more disassociated from any
statutory or regulatory support).

## CERTIFICATE OF SERVICE

I, Jason Dickstein, hereby certify that the attached

**Appellants Brief, Appendix, and Authorities**

Has been filed through the CM/ECF system on October 24, 2016, and eight copies have also been filed by hand delivery to (on the date indicated below):

> Office of the Clerk
> United States Court of Appeals for the District of Columbia Circuit
> 333 Constitution Avenue, N.W.
> Washington, DC 20001          *COPIES HAND DELIVERY*
> *FILED ON OCTOBER 23, 2016*

And that I have caused copies to be served on each opposing counsel, through the CM/ECF system (on the date indicated below):

> John S. Koppel
> Mark B. Stern
> Lewis Yelin
> U.S. Department of Justice, Civil Division, Appellate Staff
> 950 Pennsylvania Ave., N.W., Room 7646
> Washington, DC 20530

October 24, 2016

Date                          Jason Dickstein, Attorney for Appellant

*OCTOBER 23, 2016*          *KATT BRIGHAM, ADMIN ASST.*

63